William J. SONNE, Walter B. Eeds, William E. Dueease, David Hetherington, Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.

No. C14–93–01047–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 23, 1994.

Rehearing Denied Aug. 25, 1994.

Sam E. Rowland, Bryan, for appellants.

H. Fred Cook, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from the trial court's granting summary judgment for appellee, the Federal Deposit Insurance Corporation (FDIC), finding appellants severally liable on personal guaranties made with regard to a promissory note. In their first point of error, appellants contend the FDIC had no legal right to hold them to the guaranties because of a material alteration in the underlying contract. The second point of error asserts that the presence of a material fact question precluded the trial court from granting appellee's motion for summary judgment. We will affirm the judgment of the trial court.

The underlying promissory note and the guaranties were executed on October 3, 1986. The promissory note was for an amount of $2,646,000. The individual appellants each signed a separate guaranty. Each guaranty contained identical wording, differing only in the portion of the entire note each guaranty would cover. For example, appellant Eeds signed a guaranty whose maximum amount was $220,000; Hetherington's guaranty listed its maximum amount at $110,000; Sonne signed a guaranty for a maximum of $82,500; and Dueease guaranteed a maximum amount

of $38,500. However, the note underlying the guaranties on which the FDIC sued appellants had been altered by hand to show an amount of $2,940,000. The change is initialed, but the record does not describe the persons making the change or the initials.

Both parties filed motions for summary judgment, and appellants assert as point of error one the trial court's error in denying their motion for summary judgment. Where both parties file motions for summary judgment, each party must carry its burden in establishing its right to judgment as a matter of law, and neither can prevail because of the failure of the other to discharge its burden. *Beck & Masten Pontiac GMC, Inc. v. Harris County Appraisal Dist.*, 830 S.W.2d 291, 294 (Tex.App.—Houston [14th Dist.] 1992, writ denied). We assess the respective parties' summary judgment evidence in the light most favorable to the non-movants. *Odeneal v. Van Horn*, 678 S.W.2d 941, 941 (Tex.1984). Because appellants based their motion for summary judgment on an affirmative defense of material alteration, we must determine whether appellants established every element of their affirmative defense as a matter of law. TEX.R.CIV.P. 166a(c); *Murphy v. McDermott, Inc.*, 807 S.W.2d 606, 612 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

We address first one aspect of the material alteration argument on which appellants place great emphasis. Appellants argue that no contract came into existence in the first place because there was no meeting of the minds, an essential prerequisite to any contract. *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 717 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Droemer v. Transit Mix Concrete of Gonzales, Inc.*, 457 S.W.2d 332, 335 (Tex.Civ.App.—Corpus Christi 1970, no writ). Appellants rest their argument on the final paragraph of each guaranty that describes obligations of the guarantor to furnish the lender with personal financial statements. This paragraph includes a sentence stating the following: "This agreement guarantees the payment of that certain $2,646,000 promissory note dated as of October 3, 1986." Appellants contend that this language refers to a contract that never became effective, in

that the guaranty refers to "that certain" note for $2,646,000, and the guarantors were held liable for a note for $2,940,000. They argue that the fifth circuit case of *United States v. Vahlco Corp.*, 800 F.2d 462 (5th Cir.1986) is dispositive of their case. We find the facts of *Vahlco* and the instant case easily distinguishable. Appellants seek reliance on *Vahlco* because in that case, a document contained language as in the instant case, referring to "that certain" promissory note, and for this reason, the Fifth Circuit found a renewal of "that certain" promissory note breached the guaranty agreement and the guarantors of the first note were not liable on the extension due to this limiting language. As was apparent both in *Vahlco* and in the instant case, this phrasing only describes with particularity the note in question.

The same language appeared in another case that appellants cite for their position that the contract never came into existence. *Southwest Savings Ass'n v. Dunagan*, 392 S.W.2d 761, 764 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). Again, the presence of these certain words were found to describe a particular note, but they did not control over all other provisions of the contract. *See Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157–58 (Tex.1951) (entire contract must be harmonized to give effect to all provisions without rendering any provision meaningless); *Texas Gas Exploration Corp. v. Broughton Offshore*, 790 S.W.2d 781, 785 (Tex.App.—Houston [14th Dist.] 1990, no writ) (rejecting one party's interpretation of contract provision that would render other provision meaningless). The facts of *Dunagan* illustrate why appellants cannot rely on this case to discharge them from their guaranties. In *Dunagan*, various entities entered into discussions concerning a proposed note for $200,000. The case describes appellant issuing a loan commitment for $200,000 and a letter from appellant to a Mr. Layton of the title company with instructions to prepare a note for $200,000. On the same day, November 25, 1960, this letter was issued, and a guaranty agreement was drafted and attached to the loan application. The guaranty referred to "that certain promissory note in

the principal amount of $200,000 dated the 29th day of November." *Id.* at 764. Title problems appeared regarding the proposed collateral for the note, however, and the title company proposed restructuring the loan to reflect proper ownership of the collateral. The guarantors were not made aware of these changes. When the note was signed on December 1, 1960, the guaranty agreement was not part of the papers on the closing on the loan. In a case such as *Dunagan,* appellants' argument would be more persuasive. As the facts of *Dunagan* show, the note for which the guaranty was executed never came into existence. No note was signed on November 29, 1960 which was the date referred to in the guaranty. Thus, the guaranty, attached to the loan papers for the initial proposed transaction, referred to a certain loan that the facts showed was never executed. In the instant case, however, each guaranty refers to a note made on October 3, 1986 in an amount of $2,646,000. From the face of the note itself, it is obvious that it is a note dated October 3, 1986 in an amount of $2,646,000. The fact that the note was changed to reflect an increased indebtedness for whatever reason does not in these circumstances demonstrate that no binding contract was formed under the terms of the guaranty on October 3, 1986.

We find appellants' argument fails on its merits for another reason as well. Appellants are correct in citing the general rule that a material alteration in the contract will discharge the guarantor. *McKnight v. Virginia Mirror Co.,* 463 S.W.2d 428, 430 (Tex.1971). A guarantor can consent to waive this general rule, however, by representing that any material discharge will not release him from his obligation. *Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ). We find the language of the contract, the guaranty, accounted for any potential increases in the overall indebtedness under the note and intended to maintain the validity of the individual guaranties despite such increases. The first paragraph of each guaranty states the following: "The undersigned (Guarantors) jointly and severally agrees to pay to the Lender at its address set above, when due or declared due, *all debt or other liability of every kind for which Debtor now is or hereafter shall be obligated to Lender,* plus interest as provided in any agreement between Lender and Debtor and attorney's fees and other collection costs, up to the maximum amount guaranteed set out above (all called Debt herein) [emphasis added]." We find this language constitutes appellants' consent to any increased indebtedness agreed to for whatever reason between the debtor and the lender. Consent is determined on an individual basis according to the particular language of the guaranty, and courts have held guarantors to the terms of their consent as stated in a guaranty. *Federal Deposit Ins. Corp. v. Attayi,* 745 S.W.2d 939, 944 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Commerce Sav. Ass'n v. GGE Management Co.,* 539 S.W.2d 71, 82–83 (Tex. App.—Houston [1st Dist.]), *aff'd as modified,* 543 S.W.2d 862 (Tex.1976).

Appellants cite a case out of this court that they assert supports their contention that a material alteration occurred in that underlying contract thereby releasing them from their respective guaranties. *Lenamond v. North Shore Supply Co.,* 667 S.W.2d 283 (Tex.App.—Houston [14th Dist.] 1984, no writ). In *Lenamond,* the guarantor signed a guaranty stating that he would personally guarantee all indebtedness of the debtor arising out of any credit extended it by a certain creditor. *Lenamond,* 667 S.W.2d at 286. Below the signature line of the guaranty, however, appeared language stating a limit of $2500. The guarantor argued that this limitation controlled over the credit agreement itself, that included amounts up to $10,000, of which the guaranty was a part. Because the guaranty was within the credit application, this court found the guarantor intended to guarantee an amount up to $10,000. In addition, the limiting language was not even part of the guaranty because it was added after the date of the credit application and guaranty. This court held that to hold the guarantor liable for only $2500 would render meaningless other provisions of the guaranty in which the guarantors expressed their intent to guarantee future extensions of credit through the guaranty's waiver of notice provision. *Id.* at 286.

■ We find this case does not support appellants' argument. Indeed, *Lenamond* supports the FDIC's position that all of the guaranty's provisions must be read together to give effect to every provision. Other language in the contract or guaranty further supports our finding that appellants consented to an increase in the debtor's total indebtedness. For example, the guaranty states in paragraph five that it is a continuing guaranty. A continuing guaranty is one which contemplates a future course of dealing between the lender and debtor and is intended to apply to other liabilities as they accrue. *Blount v. Westinghouse Credit Corp.*, 432 S.W.2d 549, 553 (Tex.Civ.App.—Dallas 1968, no writ). This provision thus suggests the guarantors recognized the possibility that the lender and debtor would have future negotiations, possibly altering the terms of the note executed on October 3, 1986. In addition, as in *Lenamond,* this guaranty contains broad waivers, including in paragraph two a "catchall" waiver that waives notice of any kind. Our interpretation of each guaranty as a whole leads to the conclusion that the language in the final paragraph on which appellants seek to place such importance only describes the note for which they executed the guaranties and does not preclude alterations in the original note sufficient to completely discharge the guarantors.

Appellants likewise do not persuade us with their argument that they would not have signed a guaranty in connection with a note for this extra $300,000 because such increase would have increased the chance the debtor would not be able to pay and that they as the guarantors would then be held liable. This argument rings hollow in the face of paragraph seven of the guaranty that states, "Lender need not resort to Debtor or any other person or proceed against collateral before pursuing his rights against a Guarantor." This language plainly places each appellant at risk for the maximum amount of his individual guaranty despite the debtor's ability to pay. The guarantors thus knew they were liable for their individual amounts from the moment they signed the guaranty.

■ Although point of error one fails on the merits, we also find that appellants failed to carry their burden in proving their right to summary judgment as a matter of law. Because material alteration in the contract is an affirmative defense, the burden is on the guarantor to show that a material alteration occurred. *Federal Deposit Ins. Corp. v. Attayi*, 745 S.W.2d 939, 944 (Tex.App.—Houston [1st Dist.] 1988, no writ). A party asserting the affirmative defense of material alteration must prove three elements: first, the existence of a material alteration; second, lack of consent to the alteration; and third, harm resulting from the alteration. *Id.; see also Old Colony Ins. Co. v. City of Quitman*, 352 S.W.2d 452, 455 (Tex.1961) (stating rule that sureties are released when material alteration occurs without their consent and to their prejudice). As the definition in *Old Colony* indicates, harm to the guarantor is an essential element in showing a material alteration. For this reason, we cannot concur with appellants' assertion to the contrary which they glean from their reading of the appellate level decision of *Hughes v. Straus–Frank Co.*, 127 S.W.2d 582, 585 (Tex.Civ. App.—San Antonio 1939, *aff'd sub nom. Straus–Frank Co. v. Hughes,* 138 Tex. 50, 156 S.W.2d 519 (1941).

The court of civil appeals opinion, *Hughes v. Straus–Frank Co.,* does include language finding that the changes at issue constituted "such material alterations as will affect the release of sureties and guarantors, regardless of whether the alterations increase the burden upon the obligors." However, in affirming the lower court decision, the commission of appeals did not assess the material alteration issue in the same way; rather, the commission's opinion turns on the fact that the guarantor validly revoked his guaranty, and the court found that a later note could not be within the original guaranty because no language appeared in the contract that would bind the guarantor after he revoked his guaranty. *Straus–Frank Co. v. Hughes,* 138 Tex. 50, 156 S.W.2d 519, 521 (1941). A later supreme court opinion more clearly refutes appellants' contention, as it contains explicit language associating a material alteration with a prejudicial or detrimental result. *Old Colony Ins. Co.,* 352 S.W.2d at 455; *see also Vastine v. Bank of Dallas,* 808 S.W.2d 463, 464 (Tex.1991) (reciting *Old Colony* rule

that material alteration, deviation from contract without consent, and prejudice to surety together release surety from liability). Therefore, appellants had the burden to show as part of their affirmative defense some harm or prejudice. *Bullock v. Kehoe*, 678 S.W.2d 558, 559–60 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). We find appellants failed to offer any competent summary judgment proof suggesting they were harmed. The trial court found them liable for only the limited amounts of their personal guaranties, and the maximum risk to which they exposed themselves in undertaking this venture was thus not exceeded. For all of the above reasons, we overrule point of error one.

■ Point of error two complains of error in the trial court's granting appellee's motion for summary judgment. In reviewing this point of error, we determine whether appellee satisfied its burden of proving its right to judgment as a matter of law, and we review the appellants' response to the summary judgment in a light most favorable to them. Appellants assert specifically that they raised a material fact question that made summary judgment inappropriate. To recover on the promissory note, the FDIC had first to prove ownership of the note. The FDIC attached an affidavit with the promissory note in which Joe T. Vickery, authorized agent of the FDIC, asserted that the note was a true and correct copy of the note in question and that the note was properly endorsed to the FDIC and was in their possession. Such evidence establishes prima facie evidence of ownership of the note. *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex.1983). The burden then shifted to appellants to present controverting summary judgment proof on the issue of ownership. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979). As their summary judgment proof, each appellant in his respective response to the motion for summary judgment presented an affidavit stating only that he did not consent to the change in the total amount of the promissory note. These affidavits do not address the issue of appellee's ownership of the note. Therefore, absent controverting evidence in the form of competent summary judgment proof, we find appellee established

its right to judgment as a matter of law. Point of error two is overruled.

The judgment of the trial court is affirmed.

DRAUGHN, J., concurs in the results only.